Case 4:18-cv-01886 Document 25 Filed on 10/26/18 in TXSD Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
October 26, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SACHI TRADING, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 4:18-CV-1886 |
| | § | |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON – BRIT SYNDICATE 2987; and HIBBS-HALLMARK & CO., | § | |
| | § | |
| *Defendants*. | § | |

# REPORT AND RECOMMENDATION
# ON PLAINTIFF'S MOTION TO REMAND

Plaintiff Sachi Trading, LLC ("Sachi") filed this lawsuit in the 190th District Court of Harris County, Texas against Defendants Certain Underwriters at Lloyd's London–Brit Syndicate 2987 ("Lloyd's") and Hibbs-Hallmark & Co. ("Hibbs"). [ECF No. 1.] Defendants subsequently removed the suit based on diversity. [*Id.*] Now pending before this Court is Sachi's motion to remand. [ECF No. 15.]¹ It is undisputed that the parties are not completely diverse (Sachi and Hibbs are both citizens of Texas), but Defendants maintain that remand is inappropriate because Hibbs was improperly joined. Based on the motion and responses, the pleadings, and the evidence presented, the Court

---

[1] United States District Judge Keith P. Ellison referred the motion to remand for report and recommendation pursuant to 28 U.S.C. § 636(b). [ECF No. 16.]

1

determines that Defendants' improper joinder argument is without merit and that Sachi's motion to remand should be granted.

## BACKGROUND

This suit arises from a dispute over insurance coverage. Sachi processes and sells scrap metal to mills for a profit. On May 5, 2017, a fire on Sachi's property severely damaged several pieces of equipment, including a Kinshofer-brand shear and an excavator. As a result, Sachi was unable to process scrap and suffered a significant loss of business income. [ECF No. 1-2 at ¶¶ 4.2, 4.5–4.6.]

Prior to the fire, Sachi had purchased a commercial insurance policy issued by Lloyd's. Hibbs, an insurance agency, marketed and sold the policy to Sachi. [ECF No. 1-2 at ¶ 4.4.] According to Sachi's original petition:

> Hibbs, the agency that sold the Policy to Sachi, claimed and falsely represented to Sachi that damages caused by fire, among other things, would be, and indeed *are* covered by the Policy to all of [Sachi]'s property, including the Shear. [Sachi] trusted and relied upon the experience of Hibbs to procure the appropriate coverage for its specialized business needs, and Hibbs acted as the agent of Lloyd's in connection with the procurement of coverage. Hibbs led Sachi to believe that the insurance policy secured would cover its business personal property and business income in the event of standards [*sic*] perils, including a fire loss.

[ECF No. 1-2 at ¶ 4.11.]

Shortly after the fire, Sachi filed a claim for property damage and lost business income under the policy. Sachi alleges that Lloyd's "wrongfully denied, underpaid, and delayed" the claim. [ECF No. 1-2 at ¶ 4.9.] In particular, Sachi alleges that Lloyd's "completely declined to pay for any damages to the Shear, representing instead that there is no coverage for this important piece of equipment." [ECF No. 1-2 at ¶ 4.10.] Sachi's

2

petition asserts numerous causes of action against Lloyd's and Hibbs, including claims for violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act, breach of contract, common-law fraud, negligence, and negligent misrepresentation. [ECF No. 1-2 at ¶¶ 5.1–14.2.]

Sachi attached a copy of the insurance policy to its petition. [ECF No. 1-2 at Exhibit A.] The policy names Sachi as the insured and lists the policy period as April 7, 2017 to April 7, 2018. [ECF No. 1-2 at pp. 18, 26.] Consistent with the allegations in the petition, the policy provides coverage for property damage and lost business income. The "Contractors Equipment Coverage Form" states that Lloyd's "will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss." [ECF No. 1-2 at p. 33.] "Covered Property" is defined as Sachi's "contractor's equipment" as "described in the Declarations." [*Id.*] The "Contractors Equipment Declarations" lists the limits of insurance for scheduled equipment, including a $1,863,300 limit for "Contractors Equipment," but does not list any specific pieces of equipment. [ECF No. 1-2 at p. 30.] The "Business Income Coverage Form" states that Lloyd's "will pay for the actual loss of Business Income [Sachi] sustain[s] due to the necessary suspension of [Sachi's] 'operations,'" provided that, inter alia, the "suspension [was] caused by direct physical loss of or damage to property . . . for which a Business Income Limit of Insurance is shown in the Declarations." [ECF No. 1-2 at p. 39.] The "Business Income Declarations" states that "Business Income Coverage applies to the . . . Contractors Equipment Coverage Form" and lists a $500,000 insurance limit for business income

other than "rental value." [*Id.*] Nothing on the face of the policy excludes fire damage or the Kinshofer shear from coverage.

## DISCUSSION

*Legal Standard*

The federal removal statute authorizes the removal of a civil action from state to federal court if the action could have been brought originally in federal district court. 28 U.S.C. § 1441(a); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005). "The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, gives federal district courts original jurisdiction of all civil actions 'between . . . citizens of different States' where the amount in controversy exceeds $75,000." *Lincoln Prop. Co.*, 546 U.S. at 89 (quoting 28 U.S.C. § 1332(a)(1)). The statutory phrase "between . . . citizens of different States" "require[s] complete diversity between all plaintiffs and all defendants." *Id.*

Defendants in this case concede that complete diversity is lacking because Sachi and Hibbs are both citizens of Texas. [ECF No. 1 at ¶¶ 2, 4.] (It is undisputed that Lloyd's is a citizen of the United Kingdom.) Defendants argue, however, that due to the doctrine of improper joinder, Hibbs' citizenship does not require that this suit be remanded to state court.

"[T]he improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). One way a defendant can establish improper joinder is by demonstrating the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)

4

(quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)).[2] To do so, the defendant must "demonstrate[] that there is no possibility of recovery by the plaintiff against [the] in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [the] in-state defendant." *Id.* When "predicting whether a plaintiff has a reasonable basis of recovery under state law," courts generally "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id*. If at least one of the plaintiff's claims against the non-diverse defendant survives Rule 12(b)(6) scrutiny, "there is no improper joinder." *Id.*

Federal pleading standards govern the Rule 12(b)(6)-type improper joinder analysis. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 204 (5th Cir. 2016). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "[D]etailed factual allegations" are not required. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the factual allegations need only "be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co*., 491 F.3d 278,

---

[2] Defendants do not contend that there is "actual fraud in the pleading of jurisdiction facts" in this case. *Id*.

281–82 (5th Cir. 2007) (citing *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995), and *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

### ***Defendants have failed to demonstrate that Hibbs was improperly joined***

"Under Texas law, a claim for negligent misrepresentation consists of four elements: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005) (citing *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 357 (5th Cir. 1996)). Texas courts recognize that insurance agents can be held liable for negligent misrepresentation. *E.g.*, *Nast v. State Farm Fire & Cas. Co.*, 82 S.W.3d 114, 124 (Tex. App.—San Antonio 2002, no pet.).

Sachi characterizes its negligent misrepresentation claim against Hibbs as follows:

> In the course of a business or a transaction in which Hibbs had interest, Hibbs negligently misrepresented to Sachi that they were [*sic*] obtaining appropriate insurance coverage for [Sachi]'s specialized business and equipment. Hibbs supplied false information for Sachi to consider in purchasing its insurance policy and failed to exercise reasonable care or competence in communicating or obtaining information regarding the Property and policy coverages and exclusions. Sachi justifiably relied on Hibbs' representations that it had secured appropriate coverage for its property. Hibbs' negligent misrepresentations proximately caused [Sachi]'s damages.

[ECF No. 1-2 at ¶ 14.2.]

6

Taking the well-pleaded factual allegations in the petition as true, Hibbs, while acting in the course of its business as an insurance agent, "falsely represented to Sachi that damages caused by fire, among other things, would be . . . covered by the Policy to all of [Sachi]'s property, including the Shear." [ECF No. 1-2 at ¶ 4.11.] Moreover, Hibbs provided this false information for the purpose of guiding Sachi in its business. [*Id.* at ¶¶ 4.2, 4.11.] These allegations easily satisfy the first two elements of a negligent misrepresentation claim.

The third and fourth elements are met as well. On its face, the insurance policy—which may be considered under the 12(b)(6)-type analysis because it is attached to the petition, *see In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)—covers property damage and lost business income caused by fire and does not exclude the Kinshofer shear from such coverage. If the policy does not in fact provide such coverage—and for present purposes, the Court must assume that it does not—then Hibbs' representation to the contrary plausibly resulted from its failure to exercise reasonable care or competence in obtaining and/or conveying information about the policy. Furthermore, the absence of any policy provision explicitly excluding fire damage and/or the shear from coverage supports Sachi's assertion that its reliance upon Hibbs' misrepresentation was justifiable. *See Dresser-Rand Co. v. Bolick*, No. 14-12-00192-CV, 2013 WL 3770950, at *9 (Tex. App.—Houston [14th Dist.] July 18, 2013, pet. abated) ("Reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter

of law."). There is no question that Sachi suffered pecuniary loss as a result of that reliance.

Because one of Sachi's claims against Hibbs survives Rule 12(b)(6) scrutiny, it is unnecessary to analyze any of the remaining claims.[3]

Sachi attached to its motion to remand an email chain from December 2014 in which a representative of Hibbs stated to Sachi that the insurance cost for the Kinshofer shear was $2,408. [ECF No. 15-2.] In opposing the motion to remand, Hibbs provided a declaration from its senior vice president stating that Sachi purchased two previous insurance policies covering periods of time between 2014 and 2016. [ECF No. 17-1.] Hibbs also attached to that declaration numerous emails from September 2016 through May 2017. [*Id.*] Those emails show negotiations between Sachi and Hibbs regarding the 2017 insurance policy ultimately Lloyd's issued. [*Id.*] The Court declines to consider any of these documents at this juncture. In rare cases, i.e., when "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," a court "may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573. Here, however, none of the parties' additional evidence establishes "discrete and undisputed facts that would preclude [Sachi]'s recovery against [Hibbs]." *Id.* at 573–74. The 2014 emails Sachi proffered do not directly relate to the

---

[3] In opposing remand, Defendants rely heavily on the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b). While that more exacting standard would apply to Sachi's common-law fraud claim, it does not apply to the negligent misrepresentation claim. *GE Capital Corp.*, 415 F.3d at 394; *see also Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 557 (S.D. Tex. 2012) (Ellison, J.), *aff'd sub nom. Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388 (5th Cir. 2014).

2017 insurance policy; they show, at most, the general backdrop against which the 2017 policy negotiations and purchase occurred. Hibbs' evidence, while more on-point, does not conclusively establish that the 2017 policy did not cover the shear and/or fire damage, and scrutinizing that evidence any more closely at this stage "carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined." *Id.* at 574.

## CONCLUSION

For the reasons stated, the Court RECOMMENDS that Plaintiff Sachi Trading, LLC's motion to remand this suit to the 190th District Court of Harris County, Texas be GRANTED.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed at Houston, Texas, on October 26, 2018.

_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**

9